IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL WESLEY, | : | |
| | : | |
| Plaintiff, | : | CIVIL NO. 1:12-CV-1131 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| DAVID VARANO, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM**

July 10, 2012

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Plaintiff Daniel Wesley ("Plaintiff" or "Wesley"), an inmate presently confined at the State Correctional Institution Coal Township ("SCI Coal Township") in Coal Township, Pennsylvania, initiated the above civil rights action *pro se* by filing a Complaint under the provisions of 42 U.S.C. § 1983.  (Doc. 1.)  Wesley has filed a Motion for leave to proceed *in forma pauperis* in this matter.  (Doc. 8.)  Accordingly, the Complaint is before the Court for screening under the provisions of 28 U.S.C. § 1915.  For the reasons set forth herein, the Complaint will be dismissed with prejudice under the provisions of 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

## I.     ALLEGATIONS OF COMPLAINT

In his Complaint, filed on June 15, 2012, Wesley names members of the SCI Coal Township staff, including Superintendent Varano; Deputy Superintendents McMillian and Ellett; Food Service Manager Shedleski; Food Service Steward John Doe; and Health Care Administrator McCarthy.  (Doc. 1 at 1.)  Also named as a Defendant is Dental Medical Doctor Schetroma.  (*Id.*)  Wesley alleges that Defendants were deliberately indifferent to his safety and placed him at risk of serious harm by carrying out a conspiracy to serve "a discharged bullet" in his food on May 31, 2011 at dinner causing "chunks of [his] teeth to fall out."  (*Id.* at 3, 5, 8.)  He alleges that Defendants failed to provide adequate supervision and training of food service personnel, who he alleges "watched [him] eat his food with a discharged bullet in it without interfering to correct the matter."  (*Id.*)  He claims that he was "seen by dental and had to get the damaged teeth repaired due to chewing on the discharged bullet."  (*Id.* at 4.)  He seeks compensatory and punitive damages, as well as injunctive relief in the form of an order directing the prison to provide him with "peanut butter and jelly with bread" wrapped in clear plastic and placed in brown paper bags for the duration of his confinement.  (*Id.* at 4.)

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B)(ii), a federal court must dismiss a case filed *in forma pauperis* if the court determines that the complaint "fails to state a claim on which relief may be granted." In reviewing the legal sufficiency of a complaint, the Court must accept the truth of the plaintiff's factual allegations. *Morrison v. Madison Dearborn Capital Partners III L.P.*, 463 F.3d 312, 314 (3d Cir. 2006). The controlling question is whether the complaint "alleges enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

In deciding whether the complaint fails to state a claim upon which relief may be granted, the court employs the standard used to analyze motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citation omitted). To survive a motion to dismiss, the factual allegations

in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* In disposing of a 12(b)(6) motion, in addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint, and items appearing in the record of the case; hence, a court also may consider these items in screening a complaint under the provisions of 28 U.S.C. § 1915. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994) (citing *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990)).

Pro se pleadings are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend . . . unless such an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002).

## III. DISCUSSION

Preliminarily, we observe that civil rights claims cannot be premised on a theory of *respondeat superior*. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. *See Rizzo v. Goode,* 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077 (3d Cir. 1976). In his Complaint, Wesley states his allegations against Defendants generally without alleging how each Defendant was specifically involved in the alleged wrongs against him. Moreover, it would appear based upon the attachments to his Complaint that the involvement of most, if not all, of the Defendants was confined to their review of grievances and/or requests Wesley submitted relating to the incident that forms the basis for his Complaint. Defendants' involvement in reviewing and responding to Wesley's grievances does not amount to personal involvement. *See Rode*, 845 F.2d at 1207-08; *see also Mack v. Curran*, 457 Fed. Appx. 141, 144 (3d Cir. 2012) (nonprecedential) (affirming district court's order granting summary judgment in favor of defendants where alleged failure of prison superintendent and DOC secretary to take action based upon their review of inmate's grievance did not amount to personal involvement).

Nevertheless, regardless of these flaws, as set forth below, it is apparent upon

5

review of Wesley's Complaint, and attachments thereto, consisting of grievances he submitted relating to his allegations, that he cannot state a claim upon which relief may be granted.

Wesley alleges that prison officials deliberately placed a "discharged bullet" in his food and then watched him eat his food without intervening, and that he lost "chunks" of his teeth as a result. While "[t]he Constitution 'does not mandate comfortable prisons,' . . . neither does it permit inhumane ones . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). As described by the Supreme Court in *Farmer*, the standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety. *Farmer*, 511 U.S. at 837. The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

Thus, to establish an Eighth Amendment claim, Wesley must meet several requirements. First, he must demonstrate that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety. *Id.* at 834. Secondly, he must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298

(1991).  Finally, he must show that he was harmed or was in imminent danger of harm as a result of Defendants' deliberate indifference.  *Farmer*, 511 U.S. at 834.

Wesley's claim fails on all three prongs.  Accepting as true Wesley's allegation that he found a "discharged bullet" in his food, the objective component of a failure to protect claim is not generally satisfied by allegations of a single incident.  *See Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985).  However, even if we determined that the presence of a foreign object in Wesley's food presented a risk of serious harm, Wesley's allegations fail to establish that Defendants acted with "a sufficiently culpable state of mind."  *Wilson, supra*, 501 U.S. at 298.  Deliberate indifference is more than a mere lack of ordinary due care; it is a state of mind equivalent to a reckless disregard of a known risk of harm.  *Farmer*, 511 U.S. at 834.  As such, a court must consider whether an official consciously knew of and disregarded an excessive risk to a prisoner's well-being.  *Id.* at 840-44; *Hamilton v. Leavy*, 117 F.3d 742, 747 (3d Cir. 1997).  It is not enough to show that the prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists."  *Farmer*, 511 U.S. at 837.  Rather, the prison official "must also draw the inference."  *Id.*  The official's actual knowledge may be proven by circumstantial evidence.  *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001).

Wesley alleges that Defendants conspired to place the "discharged bullet" in his food and that food personnel watched him eat the food with the bullet in it without interfering. (Doc. 1 at 3.) In contrast, Superintendent Varano's denial of Wesley's appeal from the original denial of his grievance relating to this issue, which is attached to Wesley's Complaint, states that the investigation of the Food Service Manager, Defendant Shedleski, revealed that members of the Food Service did not deliberately place a foreign object in Wesley's food, but rather it "somehow ended up in the peas during the canning process and [Shedleski] or SCI Coal Township would have no control over the manner in which vegetables are processed/canned." (*Id.* at 35, 6/21/11 Varano Response.) Varano further explains, "This was an isolated event that more than likely caused this bullet or piece of metal to be placed in [a] can of peas when being processed. Unfortunate, but this does happen." (*Id.*) It is apparent from Varano's response to Wesley's grievance appeal that Wesley cannot demonstrate that prison officials consciously knew of the presence of this foreign object in the food that was served to him and disregarded any risk of harm it may have posed to him.

Finally, while Wesley alleges that he lost "chunks" of his teeth as a result of biting into what he identifies as a "discharged bullet", it is apparent from the attachments to his Complaint that he cannot establish either that he was harmed or was

8

in imminent danger of harm as a result of this incident. *See Farmer,* 511 U.S. at 834; *Hamilton*, 117 F.3d at 746. Specifically, Wesley's allegation that he was injured as a result of this incident is contradicted by the copy of Varano's denial of Wesley's grievance appeal in which he states that Defendant Shedleski's investigation revealed "no evidence" that the item Wesley found in his food even entered his mouth, let alone that it caused his teeth to fall out as he claims. (*See* Doc. 1 at 35.)

In addition, attached to Wesley's Complaint is a copy of a request he submitted to Defendant Schetroma, the dentist who examined him following the incident. (*Id.* at 22.) In his request, Wesley asks Schetroma if Wesley got the teeth on the right side of his mouth fixed on June 1, 2011 due to biting on a discharged bullet on May 31, 2011. (*Id.*) Schetroma's response is, "No- restoration was placed as a result of decay found during examination." (*Id.*) As such, it is apparent from the Complaint itself, which includes the attachment containing Schetroma's response, that the condition that necessitated the performance of dental work on Wesley following the incident was unrelated to the incident and existed before the incident even occurred, and thus Wesley cannot demonstrate that the incident caused him harm.

Based on the foregoing, Wesley cannot state a deliberate indifference claim upon which relief may be granted, and, it is apparent based upon his Complaint and its

attachments that any attempt to amend his claims would be futile. *See Alston*, 363 F.3d at 235; *Grayson*, 293 F.3d at 108. Therefore, Wesley will be granted *in forma pauperis* status for the sole purpose of filing this action, and dismissal of the Complaint will be with prejudice.

An appropriate Order will enter on today's date.